UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRES FELIPE OME OSORIO,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-08783-PCP

**ORDER GRANTING PRELIMINARY INJUNCTION**

Andres Felipe Ome Osorio is a 19-year-old Colombian national who arrived in the United States as an unaccompanied minor in 2024 and was subsequently placed in foster care. Ome Osorio is pursuing asylum and Special Immigrant Juvenile Status applications. On August 21, 2026, Ome Osorio attended a scheduled Immigration Services and Monitoring Program check-in at ICE's San Francisco office, where he was arrested. Ome Osorio filed a petition for a writ of habeas corpus, claiming that his detention violated his due process rights. On August 22, 2026, this Court issued a temporary restraining order requiring the government to release Ome Osorio and enjoining it from re-detaining him without notice and a pre-detention hearing before a neutral decisionmaker. The Court also ordered the government to show cause as to why a preliminary injunction should not issue. Dkt. No. 3. On September 2, 2026, the Court heard argument on the requested preliminary injunction. For the reasons set forth below, the Court grants Ome Osorio's motion for a preliminary injunction.

**FACTUAL BACKGROUND**

Ome Osorio is a 19-year-old asylum seeker from Colombia. Ome Osorio entered the United States unaccompanied in 2024 and was subsequently placed in the custody of Sonoma County Juvenile Court and then foster care. Knowles Decl. ¶ 4, Dkt. No. 2-2.

Ome Osorio has a heart condition characterized by episodes of syncope, or a "sudden loss

of consciousness accompanied by cessation of heart function and breathing." Knowles ¶ 5. On September 29, 2025, after an emergency hospitalization, Ome Osorio had a heart monitor surgically implanted that continuously monitors his heart rhythm and alerts his medical team of any abnormalities. Knowles ¶ 5. The device is connected to his cell phone. Knowles ¶ 5.

On at least three occasions in the last two years, Ome Osorio has been arrested. On September 17, 2024, while a minor, Ome Osorio was arrested on a juvenile matter and released that same day. Dkt. No. 4-2 at *5. On March 2, 2025, while still a minor, Ome Osorio was arrested in connection with an alleged robbery in violation of California Penal Code § 211. Notice of Supplemental Information, Dkt. No. 4. On July 4, 2026, Ome Osorio was charged with driving under the influence. Dkt. No. 4-2 at *6–7.

On August 21, 2026, Ome Osorio attended a scheduled Immigration Services and Monitoring Program check-in at ICE's San Francisco office. Knowles ¶ 6. Ome Osorio was arrested by ICE and held at 630 Sansome Street. Knowles ¶ 6. Ome Osorio's counsel filed a petition for writ of habeas corpus later that evening, Knowles ¶ 9. The petition asserts violations of the Due Process Clause of the Fifth Amendment. Shortly after filing his habeas petition, Ome Osorio filed a motion for a temporary restraining order, Dkt. No. 2, which this Court granted the following day, Dkt. No. 3.

The Court's temporary restraining order was set to expire on September 2, 2026. After a hearing on September 2, 2026, the Court extended the TRO by 14 days and allowed a supplemental filing from the government.

## LEGAL STANDARDS

Ome Osorio requests a preliminary injunction requiring a pre-deprivation bond heading before any future detention.[1] To obtain a preliminary injunction, Ome Osorio must establish that

[1] Ome Osorio also sought an order enjoining the government from transferring him out of the Northern District of California or deporting him during the pendency of his underlying removal proceedings. But it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). And at this time the threat of deportation is too remote to warrant preliminary relief.

Because the Court grants Ome Osorio's requested injunction on the basis of his procedural

United States District Court
Northern District of California

(1) he is "likely to succeed on the merits," (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [his] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

## ANALYSIS

### I. Ome Osorio is likely to succeed on the merits of his claim.

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend V; *see also Zadvydas v. Davis*, 533 U.S. 678, 690, (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates "an implicit promise" that he will be re-detained only if she violates the conditions of her release. *Morrissey v. Brewer*, 408 U.S. 471, 482, (1972). Conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Id.* at 482. Courts in this district thus consistently hold that if DHS has released a noncitizen pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody. *See, e.g.*, *Roa v. Albarran*, No. 25-cv-07802-RS, 2025 WL 2732923, at *5 (N.D. Cal. Sept. 25, 2025);

---

due process claim, it need not address the other likelihood-of-success theories asserted in his motion.

*Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025); *Guillermo M. R. v. Kaiser*, No. 25-cv-05436-RFL, 791 F.Supp.3d 1021, 1029–30 (N.D. Cal. July 17, 2025).

The government argues that Ome Osorio cannot establish a protected liberty interest because he is subject to mandatory detention under the Laken Riley Act. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (codified in relevant part at 8 U.S.C. § 1226(c)(1)(E)); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (holding that immigrants subject to mandatory detention under § 1226(a) have no due process right to a pre-deprivation hearing). Specifically, § 1226(c)(1)(E) requires the Attorney General to "take into custody any alien who … is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Based on Ome Osorio's March 2, 2025, arrest for felony robbery, the government argues that Ome Osorio must be detained by the Attorney General. Opposition at 1–2, Dkt. No. 12.

But the Laken Riley Act does not mandate Ome Osorio's detention. By its own terms, the Act applies only to an immigrant who "*is* charged with" or "*is* arrested for" one of the specified crimes. 8 U.S.C. § 1226(c)(1)(E) (emphasis added). Here, it is undisputed that Ome Osorio is not currently charged with robbery or under arrest for a robbery. The government would replace "is" with "was" or "has been," but that is not what the statute says.

Consistent with the applicable statutory language, multiple district courts interpreting the Laken Riley Act have concluded that its mandatory detention requirement does not apply if the noncitizen's criminal charges have been dismissed and the noncitizen is no longer under arrest. *See, e.g.*, *Rueda Torres v. Francis*, 2025 WL 3168759 (S.D.N.Y. Dec. 26, 2025). The Southern District of Iowa, in an early interpretation of the Act that has since been followed by other courts, noted the Act's systematic present-tense language ("is charged with, is arrested for, is convicted

United States District Court
Northern District of California

for, admits having committed … ") as suggesting that detention is mandatory only while there is an ongoing potential for criminal liability. *Helbrum v. Williams*, 2025 WL 2840273, at *5 (S.D. Iowa Mar. 18, 2026). As the court noted, each of triggering conditions for detention "track the progression of a criminal case." *Id.* at *6. The court thus concluded that § 1226(c)(1)(E)(ii) "recognizes that a person 'is charged with' a crime (present tense) only until those charges are resolved." *Id.*

Ome Osorio's situation is different from cases where charges were dropped because the record before the Court suggests that no charges were ever filed in connection with Ome Osorio's March 2025 arrest. Counsel for Ome Osorio confirmed at hearing that, as of August 31, 2026, no criminal charges had been filed against Ome Osorio for that arrest. The government suggests that, because it is possible that Ome Osorio may still be charged, the charges have not yet been "resolved" and the Act thus mandates his detention. But if anything, the fact that charges have never been filed makes the Act even less applicable. At this time, Ome Osorio is not under arrest and, in the approximately eighteen months since his March 2025 arrest, he has never been charged with a covered crime.[2]

Construing the Act to require detention only of noncitizens who are currently under arrest makes sense in the context of the statute as a whole. By requiring detention of noncitizens who are arrested, charged with, convicted of, or admit committing covered crimes, the Act ensures that such individuals will remain in detention even if the noncitizen is granted pretrial release, probation, a suspended sentence, or some other form of release from detention in the underlying criminal proceedings. The Act thus serves to supersede the release policies of the prosecuting authority. *See* 8 U.S.C. § 1226(c)(1)(E) (requiring detention "without regard to whether the alien is released on parole, supervised release, or probation"). But where no such proceedings have ever

---

[2] The government also suggests that Ome Osorio "admitted" the robbery by acknowledging that his arrest constituted a violation of the conditions of release imposed upon him in connection with a prior juvenile proceeding. But the record before the Court at this time does not demonstrate such an admission: Neither the specific conditions of release imposed upon Ome Osorio nor a transcript of the colloquy in which any such admission was made are before the Court. Given the absence of a record of the relevant juvenile proceedings, the Court need not consider at this time whether such an admission in juvenile proceedings can ever constitute an admission for the purposes of federal immigration law.

been commenced, mandating detention does not serve that purpose.

Accordingly, the Laken-Riley Act does not compel Ome Osorio's detention. Instead, Ome Osorio is subject to the discretionary-detention framework of § 1226(a), which permits detention of noncitizens only if they pose a danger to other persons or property or are unlikely to appear for scheduled proceedings. And like other noncitizens granted conditional release after their initial arrival and encounter with the federal government, Ome Osorio is entitled to due process with respect to his protected liberty interest in remaining out of immigration custody.

To determine what procedures are constitutionally sufficient to protect petitioner's liberty interest, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). That test calls for balancing the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Each of these factors supports petitioners' constitutional right to a hearing before a neutral decisionmaker prior to any future detention.

**A. Ome Osorio's Private Interest**

As explained, Ome Osorio has substantial private interests in remaining out of custody. The liberty of a noncitizen released pending removal proceedings, "although indeterminate, includes many of the core values of unqualified liberty[.]" *Morrissey*, 408 U.S. at 482. Subject to the conditions of their release, petitioners "can be gainfully employed and [are] free to be with family and friends and to form the other enduring attachments of normal life." *Id.* The termination of that liberty would "inflict[ ] a 'grievous loss'" both on petitioners and their loved ones. *Id.*; *see also Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *6–7 (N.D. Cal. Oct. 3, 2025); *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). In this case, Ome Osorio's private interest in remaining out of custody is amplified by the fact that there is a significant risk that detention will interfere with his ability to manage a life-

threatening heart condition.

Ome Osorio's private interest in remaining out of custody is thus substantial, and the first *Mathews* factor strongly favors Ome Osorio.

**B. The Risk of Erroneous Deprivation and Value of Additional Safeguards**

As discussed above, Ome Osorio is subject to discretionary detention under § 1226(a). If re-detained, he would be entitled to a post-arrest bond hearing before an immigration judge. Because such a hearing would occur after his detention and thereby result in a deprivation of his liberty until such a hearing occurs, however, there remains a substantial risk that the government will erroneously deprive Ome Osorio of his liberty in the meantime.

"[W]here ... the petitioner has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high." *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (citation modified). There are only two such bases for civil immigration detention: to prevent flight or to protect against danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Here, the government has not shown that Ome Osorio's detention would serve either purpose. In fact, Ome Osorio's serious health condition undermines either basis for his detention: He has extensive healthcare contacts in the state and must constantly monitor his cardiovascular health to minimize harmful syncopes. His sole, recent driving under the influence charge, while a serious infraction, does not alone suggest a broader danger to the community.

Given the absence of any evidence justifying petitioner's detention, there is a significant risk that the deprivation of his liberty in the time between his arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified. Providing him with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis. The second *Mathews* factor therefore also weighs in petitioners' favor.

**C. The Government's Countervailing Interest in Detaining Ome Osorio.**

Finally, the government has only a minimal countervailing interest in detaining Ome Osorio without a pre-deprivation hearing.

The government might have an interest in detaining Ome Osorio during the pendency of

removal proceedings to "'protect[] the public from dangerous criminal aliens,' or to prevent flight and thereby 'increase the change that … the aliens will be successfully removed." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). But where the government previously determined that a noncitizen can be released from detention, the government generally "may not re-arrest that noncitizen absent a change in circumstance." *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1078 (N.D. Cal. 2025) (cleaned up). Of the two recent arrests—Ome Osorio's March 2025 robbery arrest and his July 2026 arrest for DUI—neither establish a change in circumstances sufficient to deem Ome Osorio such a danger to the public that the government must detain him without any pre-deprivation hearing. As discussed above, Ome Osorio's March 2025 arrest occurred while he was a minor and appears to not have resulted in charges being filed. The government itself conducted several immigration check-ins with Ome Osorio after his March 2025 arrest and continued to allow him to live in the community and attend future check-ins on his own volition. And the July 4, 2026, drunk driving arrest, while a serious offense, does not in and of itself establish changed circumstances indicating that Ome Osorio is a danger to the community. *See Mucu Maaz v. Albarran*, 2026 WL 2447545, at *3 (N.D. Cal. Aug. 20, 2026); *Larios v. Albarran*, 2025 WL 3043391, at *7–8 (N.D. Cal. Oct. 31, 2025). As other courts in this district have held, merely being arrested on a charge does not establish a criminal conviction that would actually allow the government to infer the noncitizen at issue can be assumed to be a danger to the community. *See Ortega Macario v. Albarran*, 2026 WL 191626, at *6 (N.D. Cal. Feb. 2, 2026); *Mucu Maaz*, 2026 WL 2447545, at *3. And finally, the government cannot claim that providing a pre-deprivation hearing would impose a significant financial or administrative burden, because such custody hearings are "routine and impose a minimal cost" making their cost much lower than the cost of detaining petitioners. *Pablo Sequen*, 806 F. Supp. 3d at 1090.

The third *Mathews* factor thus also favors Ome Osorio.

Because each of the *Mathews* factors supports Ome Osorio's right to a bond hearing before an immigration judge prior to any re-arrest or detention, he has shown a likelihood of success on the merits of his procedural due-process claims.

**II. Ome Osorio will likely experience irreparable harm absent an injunction.**

The likely unconstitutional deprivation of liberty that Ome Osorio would face if he was subject to detention without a pre-deprivation bond hearing would constitute an immediate and irreparable harm. “The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury.” *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified). “When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.” *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). “[I]t follows inexorably from [the Court’s] conclusion” that petitioners “will likely be deprived of their physical liberty unconstitutionally in the absence of the injunction ... that [they] have also carried their burden as to irreparable harm.” *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

In this case, Ome Osorio faces other significant threats relating to his health. Future detentions could significantly disrupt his ability to monitor his heart and neurological condition, which causes him to faint frequently and on at least one occasion required revival using chest compressions. Reply at 17. Future detentions risks interrupting Ome Osorio’s ability to monitor his cardiovascular health including, for example, by limiting his ability to access his phone to monitor his heart functioning. *See* Declaration of Andres Felipe Ome Osorio ¶ 4, Exh. A, Dkt. No. 13-2.

Accordingly, Ome Osorio has demonstrated a likelihood of irreparable injury in the absence of injunctive relief.

**III. The balance of the equities and the public interest favor Ome Osorio.**

The final two *Winter* factors—the balance of the equities and public interest—merge because the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors also favor Ome Osorio. First, “[b]ecause public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party’s constitutional rights.” *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). Further, “the Ninth Circuit has recognized that ‘the costs to the public of immigration detention are

staggering.'" *Jorge M.F. v. Wilkinson*, No. 21-cv-01424, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified). In contrast to the irreparable harm Ome Osorio would suffer, the potential harm to the government would be minimal: At most, a short delay in detaining Ome Osorio until a neutral decisionmaker determines that his detention is legally warranted. And for the reasons noted above, the government has not demonstrated that the public interest in preventing Ome Osorio's flight or preventing him from harming the public would be significantly served by his immediate detention without a hearing. Finally, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).

Accordingly, the balance of equities and public interest favor granting a preliminary injunction.

## CONCLUSION

Because Ome Osorio has satisfied each of the requirements for issuance of a preliminary injunction, the Court grants Ome Osorio's request. The government may not re-detain Ome Osorio during the pendency of these proceedings without providing him with a pre-detention bond hearing before a neutral immigration judge. The government may re-detain Ome Osorio only if, at such a bond hearing, the government bears its burden of demonstrating by clear and convincing evidence that Ome Osorio is a danger to the community or a flight risk and that no conditions other than detention would be sufficient to prevent such harms. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).

**IT IS SO ORDERED.**

Dated: September 16, 2026

P. Casey Pitts
United States District Judge